## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MONICA J. GUILES,

      Plaintiff,

v.                                     Case No.:

ROBERT K. WILKIE, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,

      Defendant.
_____/

### **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff MONICA J. GUILES (hereinafter "Plaintiff") hereby sues Defendant, ROBERT K. WILKIE, SECRETARY, DEPARTMENT OF VETERANS AFFAIRS ("Defendant" or "Agency") and in support therefore, Plaintiff states as follows:

### **Jurisdiction, Parties and Venue**

1. This is an action for unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. §2000e, *et seq.* ("Title VII"). Plaintiff seeks equitable relief and damages including: declaratory and injunctive relief; back pay and benefits; compensatory damages; attorneys' fees, costs and expenses; and all other relief this Court deems just and proper.

2. This Court has jurisdiction of this action pursuant to the United States Constitution, Art. III, §2, Cl. 1, 28 U.S.C. §§1331, 1339, 1343, 2201 & 2202, 42 U.S.C. §2000e-5 & 2000e-16(c), and 29 U.S.C. §§791 & 794.

3. Plaintiff is a resident of Pasco County, Florida and a citizen of the United States of America.

4. Plaintiff is an employee of the Agency and an aggrieved person within the meaning of Title VII.

5. The Agency is an employer within the meaning of Title VII.

6. Venue in this Court is proper as the unlawful employment practices described herein occurred in Hillsborough County, Florida; the Plaintiff is a resident of Pasco County, Florida and was employed by the Agency in Hillsborough County, Florida. 28 U.S.C. §1391.

7. Plaintiff has met all conditions precedent and exhausted all administrative remedies prior to filing suit including:

A. Filing a timely EEO complaint;

B. Waiting more than 180 days from the date of filing her EEO complaint without receiving a Final Agency Decision.

29 C.F.R. §§1614.407.

## Facts

8. Plaintiff has been employed by the Agency for approximately 14 years.

9. On or around March 21, 2016, Plaintiff accepted a position as Staff Assistant to the Medical Center Director of the James A. Haley Veterans' Hospital and Clinics in Tampa, Joe Battle ("Battle").

10. While serving as Battle's secretary, Plaintiff was productive and received performance ratings of outstanding.

11. However, during Plaintiff's daily interactions with Battle from March 21, 2016 through October 29, 2017, he repeatedly stared at Plaintiff's crotch every chance he

had, and when Plaintiff secured a new position to remove herself from his constant gaze, Battle intentionally delayed her transfer.

12. From day one, Battle stared at Plaintiff's crotch every chance he had. It was obvious to her where on her body his gaze rested. Not unexpectedly, it caused her significant emotional distress.

13. For the first six months, Plaintiff wrestled with coming to terms with Battle's behavior.

14. Plaintiff did not solicit Battle's conduct, and she indicated his behavior was unwelcome.

15. For example, she would hide her body behind chairs, stand behind high piles of papers on his desk, or hold folders or papers in front of her crotch when she talked to him.

16. Plaintiff tried avoiding personal interaction with Battle, and instead would attempt to communicate by correspondence as much as feasible.

17. Plaintiff also changed her clothing.

18. Nothing worked, and the staring persisted.

19. Plaintiff then began checking job announcements every day, sometimes multiple times a day.

20. Plaintiff confided in a coworker that Battle stared at her crotch.

21. This coworker told Plaintiff that Battle stared at her body as well, particularly her "lower tummy." Plaintiff asked her about coming forward, but she was unwilling to do so. Her coworker eventually said she would retire before getting involved.

22. Plaintiff started crying on the way into work and sometimes even on the way home.

23. Plaintiff had nightmares about Battle hitting on her or attempting to rape her.

24. Plaintiff hated going to work. It was intolerable.

25. In April 2017, Plaintiff met with a colleague to discuss a college program. Plaintiff confided in her colleague about Battle's behavior. Her colleague encouraged Plaintiff to report Battle, but Plaintiff was worried about her career.

26. Plaintiff trembled and was very upset when describing Battle's conduct. Plaintiff was fearful, nervous, upset.

27. While Plaintiff was assured and happy in her previous job, her demeanor was very different after she began working for Battle, and she became anxious and withdrawn.

28. The colleague reported the matter to the EEO Manager, who then contacted Plaintiff and her coworker. The coworker, true to her word, promptly resigned and would provide no assistance or confirmation to the EEO Manager either way regarding Battle's conduct.

29. On April 13, 2017, Plaintiff met with the EEO Manager. She trembled the entire time and was fearful that someone did, or would tell, Battle.

30. Plaintiff was worried about her safety.

31. The EEO Manager suggested that Plaintiff do something that showed Battle that she could see that he was looking at her crotch and did not appreciate it. He suggested

alternatives to a verbal confrontation that would bring it to his attention, but Plaintiff was already doing these things.

32. Plaintiff told the EEO Manager nothing was working. During the conversation, Plaintiff became increasingly upset.

33. Plaintiff was told that she needed someone like her coworker to back up her claims if she wanted to move forward, because otherwise it was just her word against Battle's. Unfortunately, Plaintiff knew her coworker would not willingly assist.

34. For the next few weeks, Battle's conduct improved. When he did stare, he would catch himself and look Plaintiff in the eyes. However, it was not long before Battle's inappropriate behavior resumed.

35. Plaintiff continued to cry going to and from work, and even cried at work sometimes.

36. Plaintiff then confided in another co-worker, who admitted that Battle looked at her body, too, although not recently. This coworker eventually told Plaintiff that she did not want to become involved.

37. At this point, Plaintiff was depressed and fearful of retaliation.

38. On July 17, 2017, Plaintiff interviewed for a new position, which was awarded to her on July 21, 2017.

39. Around this time, Battle stared at her crotch one day, and Plaintiff took a big step to the side to hide her crotch behind a pile of papers in his inbox. His eyes shot straight up, and he looked Plaintiff right in the eye. She gave him a look indicating her disapproval, and it was clear from his response that he knew what he was doing, and his conduct was unwelcome.

40. Plaintiff immediately accepted the new position.

41. Plaintiff continued to experience stressful times at work.

42. During all times relevant, Plaintiff utilized her leave time to avoid working with Battle.

43. At a retirement party on July 31, 2017, Battle repeatedly offered to buy Plaintiff a drink and offered her bites of his food. Battle then told her that he was going to keep her in the Director's office for three or four months "just to antagonize" her.

44. Plaintiff was shocked and devastated, Plaintiff was very uncomfortable and became nauseous.

45. Battle both delayed the selection process for the replacement of Plaintiff' retired co-coworkers and dragged his feet on posting Plaintiff' job as well. Battle did exactly what he said he would do - he kept Plaintiff in his office for an additional 14 weeks, and it was antagonizing.

46. On October 25, 2017, Plaintiff caught Battle staring at her crotch again. She also saw him looking at his new secretary.

47. Plaintiff started her new job in Human Resources on October 30, 2017. Plaintiff waited for Battle to complete her final performance rating, and then filed her informal complaint on or around November 27, 2017.

48. Plaintiff was fearful and anxious to walk around the hospital campus. Her new job required her to run folders up to Battle's suite, and she was terrified to run into him. When Battle called HR and Plaintiff answered, her stomach turned. Fortunately, HR eventually moved to an offsite location.

49. Plaintiff filed her Formal Complaint on February 12, 2018 alleging Battle stared at her crotch constantly and delayed her transfer to the new position. She has not received a final Agency decision.

50. Despite Plaintiff's complaints, the Agency failed to exercise reasonable care to prevent and/or promptly correct the sexual harassment.

### Count I – Sexual Harassment in Violation of Title VII

51. Plaintiff incorporates Paragraphs 1 through 50 above as if fully set forth herein.

52. Title VII forbids discrimination on the basis of sex and inducing sexual harassment that create a hostile work environment.

53. Battle subjected Plaintiff to sexual harassment that created a hostile work environment in violation of Title VII when he repeatedly stared at Plaintiff's crotch every chance he had, and when Plaintiff secured a new position to remove herself from his contestant gaze, he intentionally delayed her transfer.

54. Battle's conduct was unwelcome, humiliating and degrading.

55. Battle's conduct was severe or pervasive and created a hostile working environment.

56. Plaintiff perceived the working environment to be abusive or hostile, which caused Plaintiff sufficient stress and anxiety.

57. Under Title VII, the Agency is strictly liable for a sexually hostile work environment created by a supervisor.

58. Additionally, the Agency knew or should have known of the conduct of their employee, and nevertheless failed to take prompt and effective remedial action.

Defendants are liable for the actions of their employee for creating and permitting a hostile work environment, which constituted unlawful harassment on account of Plaintiff's sex in violation of Title VII.

59. Plaintiff suffered harm as a result of the foregoing described conduct.

60. As a result of Defendant's actions, Plaintiff suffered loss of accumulated leave, pain, suffering, humiliation, shame, anxiety, embarrassment, mortification, and emotional distress, and has incurred reasonable attorney's fees, costs and expenses.

## Demand for Jury Trial

61. Plaintiff demands a trial by jury on all issues so triable.

## Relief Requested

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter a judgment in favor of Plaintiff and against Defendant declaring that the Agency unlawfully discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. §2000e, *et seq.*;

B. Issue a mandatory injunction:

(1) Requiring the Agency to effectively plan, develop, undertake, implement and monitor a plan designed to ensure that Agency employees are not subjected to harassment or discrimination on the basis of sex; and/or;

(2) Enjoining the Agency from denying Plaintiff any of her rights, privileges or benefits of employment or otherwise harassing her on account of her sex;

C. Award Plaintiff reinstatement of accrued time which she utilized to avoid her harasser; and/or

D. Award Plaintiff such other nominal, general, compensatory, and other damages available under Title VII; and/or

E. Award Plaintiff her costs, expenses and attorneys' fees pursuant to the provisions of Title VII; and/or

F. Retain continuing jurisdiction in order to ensure compliance with the terms of the mandatory injunction requested herein; and/or

G. Grant such additional relief as this Court may deem just and appropriate.

Dated January 20, 2020.

Respectfully submitted,

s/ Amanda L. Biondolino
Amanda L. Biondolino, Esquire
Florida Bar No. 1008493
Cynthia N. Sass, Esquire
Florida Bar No. 0691320
**SASS LAW FIRM**
601 West Dr. Martin Luther King, Jr. Boulevard
Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile:  (813) 259-9797
**DESIGNATION OF E-MAIL SERVICE**:
**Primary**:      csass@sasslawfirm.com
**Secondary**:   reception@sasslawfirm.com
                 bcruz@sasslawfirm.com
**Primary**:      abiondolino@sasslawfirm.com
**Secondary**:   reception@sasslawfirm.com
                 jolney@sasslawfirm.com